La Sociedad Nido & Cía., *S. en C.*, Appellant, *v.* The Registrar of Property of Guayama, Respondent.

No. 1294. Submitted April 1, 1953.—Decided April 24, 1953.

738

*Luis Domínguez Rovira* and *C. Domínguez Rubio* for appellant. The Registrar appeared by brief.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The documents presented to the Acting Registrar of Property of the District of Guayama disclose the following facts:

In 1913 a limited mercantile co-partnership was established under the firm name "Nido y Compañía, Sociedad en Comandita," composed of a managing partner and two special partners. Its duration was fixed at six years. Subsequently, deeds were executed extending the partnership for specific terms and making certain changes as to the identity of the partners and the corresponding shares. On September 28, 1929, said partnership was modified, admitting Pedro, María Adela, Tomás Isaías, Angeles Alvilda, José Ramón Estanislao and Alberto Angel de Nido as new partners together with the former partners, Alvilda de Nido y Monserrat, widow of Nido, and Rafael de Nido, all of whom became special partners, except Rafael and Pedro de Nido, who became active managing partners. A four-year extension, to expire June 30, 1933, was established. On June 29, 1933, after obtaining judicial authorization (since some of the partners were minors) the partnership was extended for 30 days. There-

after all the partners executed a new deed extending the partnership for four additional years, to expire on August 31, 1937. In this deed Rafael de Nido withdrew as managing partner although he continued as special partner and Pedro de Nido remained as the sole managing partner, it being indicated that he would continue as such "with full powers, without any limitation whatsoever, to represent it." On August 23, 1952, a deed of sale of an urban property belonging to the partnership above mentioned and recorded in the Registry as such was presented in the Registry of Property of Guayama. Pedro Nido appeared "as the sole managing partner as well as liquidator" of the partnership selling the said property to Mr. and Mrs. José Rovira Sánchez and Mr. and Mrs. Eduardo Rovira Sánchez. That deed recites:

"The said Mr. Nido appears as the only managing partner as well as liquidator of the Civil, Agricultural and Industrial Partnership, domiciled in Arroyo, Puerto Rico, 'Nido y Compañía Sociedad en Comandita,' appearing as such managing partner in accordance with deed number seventy five (75) of Extension and Modification of said Partnership executed at Guayama on August twenty-nine (29) nineteen hundred and thirty-three (1933) before Tomás Bernardini de la Huerta the then notary of said city; said party declaring that the operations of the partnership above mentioned were subsequently extended for an additional four (4)-year term pursuant to deed number sixty-one (61) also executed before the same notary above mentioned, Tomás Bernardini de la Huerta, on August twenty-four (24) nineteen hundred and thirty-seven (1937), said extension to expire on August thirty-one (31) nineteen hundred and forty-one (1941) and subsequently extended again, as said party shall prove whenever necessary or he may be required to do so."

Deed No. 61 of August 24, 1937, which, according to the appearing party, extended the partnership until August 31, 1941, was not attached to the deed of sale presented in the Registry. Nor was any other document directly establishing subsequent extensions accompanied either. However, a deed

of Ratification, of October 13, 1948, executed by all the partners who, according to deed No. 75 of August 29, 1933, composed the partnership, was attached. The parties stated in said Deed of Ratification that they appeared in their capacity as the "only partners of the Civil, Agricultural and Industrial Partnership 'Nido y Compañía Sociedad en Comandita,' Pedro de Nido y Nido being the only managing partner, and the others, special partners," which capacity appeared from deeds Nos. 107 of September 28, 1929; 75 of August 29, 1933, and 61 of August 24, 1937. The Deed of Ratification likewise recites that by virtue of the extension established by those deeds the partners agreed to continue, and actually did continue, the business of the partnership, and said Deed of Ratification further states:

"THIRD: That by a private agreement between the partners, entered in the Minute Book of the Partnership and executed on August twenty-eight nineteen hundred and forty-one, said partners agreed to extend the Partnership once more, under the same terms and conditions above set forth, until June thirty nineteen hundred and forty-two, and that on or about June twenty-eight nineteen hundred and forty-two, the appearing partners again agreed to extend under the same terms above mentioned, and as a matter of fact did extend, the life of the civil Partnership 'Nido y Compañía, Sociedad en Comandita,' for an indefinite term and until its complete liquidation by means of the sale of its personal and real properties, authorizing the only managing partner, Pedro de Nido y Nido, as he actually was, to continue managing and controlling, in his sole and absolute discretion, the business of the Partnership until such time as he deemed opportune and convenient to sell all or part of the properties of the Partnership.

"FOURTH: That pursuant to the extensions thus agreed to between the partners on the dates above mentioned, which extensions are hereby and now ratified, the managing partner Pedro Nido, continued managing and controlling the business of the Partnership up to date, having executed in such capacity as managing partner with full powers, several documents and deeds which shall be hereinafter specified, alienating personal and real property of the Partnership.

742

"FIFTH: That by reason of the removal of the offices of the Partnership and the recent sale of a large part of its properties, its Minute Book has been lost, wherefore it is impossible to copy said minutes literally in this deed, and in order to authentically prove and to ratify, approve and adopt as their own the acts of the managing partner, Pedro Nido, in connection with the sale and sublease of personal and real property of the Partnership, the parties hereto in their respective capacities as the only partners of the civil, agricultural and industrial partnership 'Nido y Compañía, Sociedad en Comandita,' assisted by their respective spouses, do so execute under the following

CLAUSES

"FIRST: The appearing partners Alvilda de Nido y Monserrat widow of Nido, and the other seven partners, all of whom bear the surname Nido y Nido, hereby reaffirm and ratify the private agreements extending the Partnership above referred to and expressly ratify the aforesaid agreements and extensions in the manner set forth, stating further that as a matter of fact, the civil, agricultural and industrial Partnership 'Nido y Compañía, Sociedad en Comandita,' has continued and continues operating in accordance with the aforesaid extensions and the bases therein stipulated.

"Second: The appearing partners likewise affirm and ratify the powers vested in the managing partner Pedro de Nido y Nido, in order that on behalf of the Partnership he may sell the real and personal properties of the Partnership for the price and under the conditions which he at his sole and absolute discretion, deems convenient to the best interests of the Partnership and its members, it being hereby established that said powers remain in full force and that they have been in no way limited, modified or revoked.

"Third: The executing partners hereby ratify in all its parts, among others, deeds numbers fifty-six (56), fifty-seven (57) and fifty-eight (58) executed in Guayama, Puerto Rico, before notary public Tomás Bernardini Palés, on June nine, nineteen hundred and forty-eight, in favor of Rafael Velázquez Grillo, by Pedro de Nido y Nido in his capacity as managing partner of the civil, agricultural and industrial Partnership 'Nido y Compañía, Sociedad en Comandita,' exactly as if they had been individually executed by each of the parties hereto, the effect of this ratification being retroactive to the date of said deeds.

"Fourth: The partners appearing hereto hereby empower the managing partner, Pedro de Nido y Nido, to sell, assign and transfer, on behalf of the Partnership 'Nido y Compañía, Sociedad en Comandita,' and of the partners appearing hereto, for the price and under the conditions which, at his sole discretion and exclusive opinion, he considers convenient to the best interests of the Partnership, the remaining real and personal properties of the Partnership until their complete alienation, said managing partners binding himself to render to the other partners periodic reports of these sales and to inform them as soon as all the properties of the Partnership have been disposed of in order to proceed to the final liquidation and dissolution of the Partnership.

"Fifth: The managing partner, Pedro Nido, set forth that after the sales made and the subleases agreed to, there remain to the Partnership only two parcels of land, namely, a parcel of approximately one cuerda and one thousand eighty-five ten thousandths of another (1.1085) on which the residential houses and the offices of the Partnership are located, the sale of which parcel has already been agreed to with the brothers Miguel, José and Eduardo Rovira Sánchez, of the town of Arroyo, and another parcel of approximately five cuerdas, located next to the municipal hospital of that same town and bounding on Morse Street, formerly planted with cane, unplanted today. The executing partners affirm their specific authorization to the managing partner, Pedro Nido, in order that he proceed to close the sale of the parcel in favor of the Rovira Sánchez brothers, executing the proper deed and likewise to sell the other parcel under the conditions and term that, at his sole discretion and in his exclusive opinion, he considers convenient to the best interests of the civil, agricultural and industrial partnership 'Nido y Compañía, Sociedad en Comandita,' and of his partners."

The Acting Registrar of Guayama refused to record the aforesaid deed of sale (of November 27, 1948) in which, as already noted, an urban property was sold to José and to Eduardo Rovira Sánchez, and to their wives. The ruling of the Registrar refusing recordation reads as follows:

"Record of this document is hereby DENIED, after examining others, as shown by the marginal note entered on the description of each one of the properties, on the following grounds: . FIRST:

That the recordable facts or acts specified as having occurred, in a deed, shall merely constitute full proof when they have been agreed to before the authenticating notary, who shall attest as to their existence by means of the words 'Before me'; on the contrary, those that have taken place previously, but without the assistance of a notary, although set forth in the deed, lack juridical value and are not binding on third parties, except on those who may have appeared at the execution of the deed; SECOND: In view of the foregoing precedent and abiding by the documents attached to the aforesaid deed of ratification, after the extension and modification mentioned in the deed of August twenty-nine, nineteen hundred and thirty-three, before notary Tomás Bernardini de la Huerta, admitting that the civil, agricultural and industrial Partnership 'Nido & Compañía, S. en C.,' fixes its duration until August twenty-nine, nineteen hundred and thirty-seven, no evidence is presented to this Registry, which may serve as a basis for the registration sought, abiding by the statements contained in its first clause, inasmuch as the private agreements stipulated between those partners appearing thereto, and which it is set forth were entered in the Minute Book of the Partnership, lacked any authentic probative value to render them recordable, since the said book is nowhere to be found, and since deed number sixty-five, executed on August twenty-four, nineteen hundred and thirty-seven, containing the extra four-year extension, before notary Tomás Bernardini de la Huerta, was not attached, for which reason such acts or private agreements are in our opinion doubtful, and not evidently existent, as required by the Mortgage Law. THIRD: The fact that there is no proof in the documents presented, nor sufficient evidence to take as true that the partnership 'Nido & Compañía, S. en C.' was extended and modified after August twenty-nine, nineteen hundred and thirty-seven, strengthens our opinion that said entity terminated on the expiration of the former period, or perhaps, at the most, upon accepting the agreement of deed number sixty-five, of August twenty-four, nineteen hundred and thirty-seven, which merely established, without more, an extension until the same day, month and year of nineteen hundred and forty-one, wherefore, it becomes evident, taking into account also the time lapsed, that the aforesaid Partnership 'Nido y Compañía, S. en C.' became completely extinguished without any juridical standing, in accordance with the provisions of Section one hundred and forty-two of the Code of Commerce, in

connection with Sections one thousand five hundred and ninety three and one thousand five hundred and ninety four of that same code (*sic*), which requires the drawing up of a new partnership contract and its record in the Mercantile Registry having a compulsory nature, nothing of which has been done. FOURTH: Abiding by the context of deed number six, of October nineteen hundred and forty-eight, we noticed that in the second clause thereof another agreement is set forth vesting the former managing partner, Pedro Nido, with authority to sell personal and real property of the extinct Partnership, from which it may be gathered that those executing parties acted on their own account without abiding by the clauses of the former original entity, which results in obvious antinomy with the extensions which they claim that they executed individually, which contradiction and ambiguity can not be admitted within the mortgage rules. FIFTH: To elaborate further, it appears from the said deed number six, executed before notary Mr. Canales, that its third clause mentions deeds fifty-six, fifty-seven and fifty-eight, executed before the notary of Guayama, Tomás Bernardini Palés, on June nineteen (*sic*) nineteen hundred and forty-eight, wherein the partners, acting in their individual and independent capacity, upon referring to the said deeds, 'exactly as if they had been individually executed,' as textually recognized, ratified the acts performed by the managing partner Pedro de Nido, regarding the sale of another property that had taken place; which proves that said entity 'Nido y Compañía, S. en C.' was regarded by its own members as dissolved actually assuming a position contradictory to the intent of extending said extinguished partnership as claimed in the second clause of said deed number six: it likewise appearing from the execution of the aforesaid deeds that the personality of the former managing partner, Pedro de Nido, was totally divested subsequent thereto of its character of liquidator of the former Partnership in which capacity he wishes to appear at present. SIXTH: Taking into account, furthermore, that since it is not proved in an authentic manner that said mercantile entity was extended prior to the expiration of the term of the Partnership or after the expiration thereof, it is impossible to ascertain whether it is the same Partnership extended or a different partnership continuing the former in order to apply, in accordance with each one of those situations, the provisions of article twenty of the Mortgage Law in connection with Sections one thousand five hundred ninety

four of the Civil Code and one hundred and forty-two of the Code of Commerce, which construction we deem is in harmony with the decision rendered by the Honorable Supreme Court of Puerto Rico, in *P. Gandía & Co.* v. *Registrar of San Juan,* 31 P.R.R. 74; and in lieu thereof a cautionary notice is entered for the statutory period of 120 days in favor of the purchasers. Said properties, because of their origin, are encumbered by two attachments in favor of the People of Puerto Rico, for the payment of income taxes. Guayama, October eleven, nineteen hundred and fifty-two."

The so-called Partnership Nido y Compañía, *S. en C.,* and the brothers José and Eduardo Rovira Sánchez have taken an Administrative Appeal from the registrar's note of refusal. The Registrar's decision was based, essentially, on the following terms:

(1) That the documents submitted to the Registry disclosed that the Partnership in question had been dissolved prior to the deed of sale.

(2) That it was not sufficiently proved to the Registrar that said partnership had been extended after August 31, 1937.

(3) That it was not sufficiently proved to the Registrar that Pedro Nido was duly qualified to act on behalf of the Partnership and that, therefore, since the properties were recorded in the name of the partnership, the registration of the sale did not lie.

On their part, the appellants maintain that the Registrar should accept as true the statements made by the partners in the deed of Ratification, as to the extensions; that the documents showed that Pedro Nido had sufficient capacity to act on behalf of the partnership, either as a managing partner or as liquidator, and that, in any event, all the partners had ratified the capacity and the acts of Pedro Nido, the deed of sale in question having been specifically ratified.

The first problem raised here refers to the scope and limitations of a Registrar's power to pass upon the documents. We must notice, at the threshold of the discussion, that,

from the point of view of Comparative Law, there are, in different countries, three systems of passing upon the documents presented, one, the most limited, in which the Registrar merely transcribes and records mechanically all the documents presented to him, without his action affecting the validity or efficacy of the rights recorded and without having authority to inquire into the legal sufficiency of said documents; the second, which grants absolute powers to the Registrar to decree the validity or invalidity of the rights sought to be recorded, in such a way that the rights stem from the record, which determines definitively the existence and effectiveness of the rights, and the third system, which is ours, and which is eclectic and relative, inasmuch as the Registrar is not an automaton or filing clerk deprived of powers, but neither is he a judge or judicial ruler who may definitively pass upon the rights of the interested persons. 2 Morell, *Legislación Hipotecaria*, 230 *et seq*; 1 Barrachina, *Derecho Hipotecario y Notarial*, 199; Muñoz Morales; *Lecciones de Derecho Hipotecario*, Vol. I, p. 105. Under our system the Registrar neither declares nor determines doubtful or contradictory titles, but he does proclaim, after examining the documentary evidence, that a real right or legal status regarding real property has been established in the Registry, authenticating such statements in the books of the Registry, although his determinations are subject to an adverse proceeding in a court on the same subject matter. 2 Roca Sastre, *Derecho Inmobiliario*, 11 and 12.

The Registrar's power to determine the legality of documents is established in § 18 of our Mortgage Law, which provides in part, that Registrars shall, under their responsibility, determine the legality of the instruments sought to be recorded and the capacity of the parties thereto upon the facts that appear from the instruments themselves.[1]

---

[1] Our § 18 is broader than the corresponding Article of the Spanish Mortgage Law, which determines that Registrars shall determine the legality of the extrinsic forms of the documents as well as the capacity

Article 78 of the Regulations for the Execution of the Mortgage Law provides in part, that the determination by the Registrar in accordance with § 18 of the law shall be considered limited to the effect of denying, suspending or admitting the instruments to record, and shall not constitute a bar to nor prejudice the action which may be brought in court for the annulment of such deed, or challenging the jurisdiction of such judge or court.

Under the foregoing Articles a Registrar lacks authority to determine whether the statements contained in a deed are true or not. *Noguera* v. *Registrar*, 72 P.R.R. 186, 189–190. But such statements or averments are not legally sufficient if it appears before the Registrar that the law has not been complied with. *Cf. Polanco* v. *Registrar*, 70 P.R.R. 710. The very case of *Noguera* v. *Registrar*, *supra*, affirmed the refusal to record a deed on the ground that payment of the inheritance tax or exemption therefrom was not established, and the opinion recites that recordation must not be allowed if the violation of imperative statutory requirements is authorized thereby. It is not merely a power, but rather a duty imposed on the Registrar to see that only acts which are valid according to law appear in the Registry, the Registrar having no discretion as to whether he may exempt anyone from the obligations imposed by law or regulations. *Water Resources Authority* v. *Registrar*, 71 P.R.R. 24, 30; *Alicea* v. *Registrar*, 71 P.R.R. 554, 558–9; *Mari* v. *Registrar*, 72 P.R.R. 830, 832; *Rivera* v. *Registrar*, 64 P.R.R. 440, 444: *Ramos* v. *Registrar*, 69 P.R.R. 660.[2]

---

of the parties thereto and the validity of the dispositive clauses contained in the public deeds. See Muñoz Morales, *Lecciones de Derecho Hipotecario*, Vol. 1, p. 106.

[2] The boundary line is clear as to passing upon judicial decisions. The Registrar may not question the grounds of such decisions, (*Roman Catholic Church, etc.* v. *Registrar*, 61 P.R.R. 238) nor the intrinsic justice of the decisions (*Banco de P. R.* v. *Registrar of San Juan*, 24 P.R.R. 664), nor the sufficiency nor the weighing of the evidence by a court, (*Fernández* v. *Registrar of Property*, 17 P.R.R. 1021; *Wilcox* v. *Registrar*, 67 P.R.R. 445, 452), but the Registrar may refuse to record when it appears that the

The following is set forth in Barrachina, *op. cit.*, at pages 203 and 204:

"To dispel all doubts, resulting from such contrary views, and in order to bolster the decision of November 12, 1874, the aforesaid Order was rendered on the same month and year, after hearing the State Council, declaring the competency of Registrars to pass upon the so-called intrinsic forms; and *here the suit ended.*

"We are of the same opinion. Void acts or contracts should not be recorded in the Registry, only those that have an aspect of legality; if the former were to be recorded, ownership would be uncertain, territorial credit would lack guarantees; restlessness would prevail in the possession and enjoyment of rights; good faith would have no basis, and we would be compelled to retreat, time and progress being rendered valueless, to the old regime, condemned by science and opinion.

"If now that the modern trend is to substantiate the registration of titles as a safeguard to all real rights, void agreements and contracts were admitted to record, without a veto on the part of the State, the latter administering remedial justice, the Mortgage Law, that juridical monument of which we are so proud, would fall by the wayside, its ashlar shattered and its transcendental purpose wasted.

"But—and here lies the difficulty of the problem—it is the opinion of renowned jurists, that the title and only the title must be relied on for determining the validity or nullity of the juridical act, which determination should and must be made only by the officer authorizing it, not by the Registrar.

"This is an error, because such a determination merely affects the parties executing the act or contract and other interested parties, but no persons alien to the juridical fact; and since the Registry must reflect lawfully and faithfully the right recorded, as well as that on which it relies, both in their full

---

court lacked jurisdiction or venue or that the legal prerequisites to enter the order have not been complied with, or that the essential proceedings and rules for its validity were not observed, or that the procedure established by law, necessary for its validity, was not followed, or whether the decision does not contain all the facts which are necessary for its recordation according to the Mortgage Law. *Heirs of Trías* v. *Registrar*, 59 P.R.R. 462; *Lebrón* v. *Registrar*, 63 P.R.R. 346, 357; *Herrero* v. *Registrar*, 63 P.R.R. 681; *Pirela* v. *Registrar*, 65 P.R.R. 900; *Carbonell* v. *Registrar*, 40 P.R.R. 511.

extension and modalities, there is no other way to secure the rights of a third party, for whose protection the Registry was created, than to prevent at all cost the record of any invalid document, which is the only way to prevent that invalidating acts be disclosed from the entries in the registry which might be prejudicial and even deceive the purchaser in good faith who is not always familiar with the Law.

"In speaking of deeds, with respect to the validity of obligations, § 18 of the Law employs the word *obligation* in a broad sense, which comprises agreements and contracts as stated in the R. O. of November 12, 1870, which restored the sound opinion on the subject."

The Registrar's power to demand compliance with the requirements of the Mortgage Law and of the positive law before a registration, has special significance when the documents presented and the entries in the Registry do not disclose the capacity or the representative power of the executing party. As held in *Rivera* v. *Registrar*, 17 P.R.R. 307, 308, in accordance with the aforesaid § 18, it is the duty of the Registrar to determine the capacity of the parties to an instrument upon the facts that appear from the deed presented to him for admission to record and from the entries in the Registry, but this means that he may not use information foreign to the deed or to the entries of the Registry, without this implying that in any event the Registrar must consider as proved the capacity of the parties, only on the notary's unsupported assertion, since such assertion must be congruent with the law and the entries in the Registry as to the same property. *Cf. Graciani* v. *Registrar of San Germán*, 25 P.R.R. 41; *Colón* v. *The Registrar of Arecibo*, 22 P.R.R. 510; *Ramírez* v. *The Registrar of Property*, 16 P.R.R. 330; *Infanzón & Rodríguez* v. *Reg. of Guayama*, 24 P.R.R. 130. Especially, the assertions contained in a deed as to the facts vesting the executing party with power to act on behalf of another and to bind third parties are not enough. *Land Authority* v. *Registrar*, 62 P.R.R. 483, 486. The Registrar may in that case demand evidence or complementary

documents complying with the law, (*Successors of L. Villamil & Co.* v. *The Registrar*, 16 P.R.R. 721, in which it was decided that it was necessary to present to the Registrar, as to a deed of dissolution of a partnership, the special power of attorney given by a partner in favor of an agent). See also, *Colón* v. *The Registrar of Arecibo, supra; Ruiz* v. *Torres*, 61 P.R.R. 1. In *Estévez* v. *Registrar*, 67 P.R.R. 337, it is pointed out that in passing upon a document, the Registrar is not bound by the name given by the attesting notary to the transaction embodied in said document.

■ Applying these general concepts to the case at bar, the deeds submitted to the Registrar disclosed, as we have seen, that in deed No. 75, executed before notary Tomás Bernardini de la Huerta, on August 29, 1933, the aforesaid partnership was modified and extended until August 31, 1937. In the deed of Ratification above mentioned, the partners state that in deed No. 61 of August 29, 1937, before the same notary, the partnership was again extended until August 31, 1941, and that by private agreement of the members taken to the Minute Book which, according to the partners, was lost, the partnership was subsequently extended. Deed No. 61 was not attached to the deed of sale in question. Now, from the point of view of the alleged existence of the partnership, the Registrar was not bound to act on the basis of the statement of the partners as to deed No. 61 and as to the private agreements of extensions. The reference to such deed and agreements did not constitute adequate proof before the Registrar justifying registration. Deed No. 61 itself should have been presented as a complementary document, especially in order to prove the continuous existence of the partnership and the alleged representative capacity of Pedro Nido, as managing partner. As to those facts the certainty presumed by a record in the Registry required the presentation of proof more authentic than the mere collateral reference to documents that should have been submitted to

the Registrar, especially in the case of alleged extensions of a mercantile partnership.

The deeds refer to the partnership as a "civil, agricultural and industrial partnership" but since it adopted the form of a limited partnership, it must be considered as a commercial partnership, to which the provisions of the Code of Commerce are applicable. *Godreau* v. *Godreau & Co.*, 64 P.R.R. 310. As provided by § 141 of the Code of Commerce, commercial partnerships shall be wholly dissolved by the expiration of the term stipulated in the contract. Section 142 of that same Code determines that commercial associations shall not be considered as extended by the implied or presumed will of the members, after the period for which they were constituted has elapsed; and if the members desire to continue in partnership they shall draw up new articles, subject to all the formalities prescribed for their establishment, according to the provisions of § 98. Section 98 of that same Code provides as follows:

"Section 98.—Record of establishment and agreements, etc. —Every commercial association before beginning business shall be obliged to record its establishments, agreements, and conditions in a public instrument, which shall be presented for record in the mercantile registry, in accordance with the provisions of section 11.

"Additional instruments which modify or alter in any manner whatsoever the original contracts of the association are subject to the same formalities, in accordance with the provisions of section 18.

"Partners can not make private agreements, but all must appear in the articles of copartnership."

From the Sections copied above it is evident that: (1) an extension of a mercantile partnership, like that of the case at bar, must be made by the partners expressly, in a public deed and that (2) partners are not permitted to make private agreements. It could be alleged that § 142 prohibits an implied or presumed extension only if it is attempted after the expiration of the stipulated term and that such prohibition

is not applicable to an extension made prior to the expiration of the term. However, it appears from all the Sections quoted that a new contract is necessary, in accordance with § 98, if the partners desire to continue in partnership. At any rate, even assuming that an implied extension, or one that is not in accordance with § 98, is effective among the partners themselves, it would not be binding on third parties, which is the relevant fact as to the problem of recording in the Registry of Property an alienation made on behalf of the partnership.

In *P. Gandía & Co.* v. *Registrar of San Juan*, 31 P.R.R. 74, no need of extension of a mercantile partnership was executed and the partners, nevertheless, organized a new partnership by a public deed indicating that the old partnership had continued in business. It was held that a mortgage on a property recorded in the name of the old partnership was not recordable pursuant to § 20 of the Mortgage Law; and that the fact that the former partnership continued in business did not imply an extension, under the Sections of the Code of Commerce quoted above. The following was stated in the opinion:

"As appears from the paragraph quoted, the term of the old firm of P. Gandía & Company expired on July 31, 1921, and therefore it was totally dissolved, in accordance with article 221 of the Code of Commerce, which reads as follows:

" 'Art. 221.—Associations of any kind whatsoever shall be completely dissolved for the following reasons:

" '1. The termination of the period fixed in the articles of association or the conclusion of the enterprise which constitutes its purpose. . . .'

"The fact that after the expiration of the term the partners continued the business of the firm does not imply that the partnership term had been extended by the tacit consent of the partners after the term had expired.

"However, in executing the deed of January 29, 1922, the appellants seem to have had the intention of legalizing their situation, inasmuch as the old firm had continued in business,

and thus they thought that it would be possible to establish a solution of continuity between the old firm and the new firm and that both firms could be considered as one. But this is positively incompatible with article 223 of the Code of Commerce which not only prohibits the extension of the terms of mercantile partnerships by the implied or presumed consent of the partners after the expiration of the periods for which they were organized, but also provides that 'if the members desire to continue in partnership they shall draw up new articles, subject to all the formalities prescribed for their establishment, according to the provision of article 119.'

"If, as prescribed by said article 223, the new articles for the organization of a partnership must be subject to all of the formalities required by article 119, it is necessary *a fortiori* to conclude that a new firm has been organized and as such it must be considered, distinct from the old firm because it has been completely dissolved by the expiration of its term; therefore, the registrar was right in requiring the application of article 20 of the Mortgage Law."

In the Judgment of July 8, 1903 of the Supreme Court of Spain (96 *Jur. Civ.* 87) in construing provisions of the Spanish Code of Commerce identical with the provisions we have quoted of our Code, the following was decided:

"The dissolution of a partnership on the ground that the term of duration has expired must necessarily take effect upon the expiration of said term and the clause authorizing the partners to continue the partnership can in nowise bar said dissolution if the person relying on said clause did not express previously his intention to that effect, nor executed the necessary deed of continuation of partnership, and far from that, adopted in the operations the formula 'in liquidation,' indicating that the partnership was dissolved . . . . At the expiration of the term stipulated in the partnership contract, if the same is not extended by a new contract, the partnership is considered as wholly dissolved. The contract of extension of a partnership must be executed prior to the expiration date of the partnership, for on said date the partnership becomes 'ipso facto' dissolved and in order to continue in business in that event, as such partnership, a new contract would have to be executed with the formalities prescribed for its establishment in § 119 [98 of ours]

of the Code of Commerce." (See also, the Judgment of April 3, 1902.)

In *San Miguel* v. *Registrar of Property*, 18 P.R.R. 500, it was held that a deed of cancellation of mortgage, which mortgage was recorded in the name of a mercantile partnership, was recordable, although the deed of cancellation had been executed after the expiration of the partnership contract. The following was set forth in the opinion:

"In order to obtain the cancellation of said two mortgages the creditor partnership presented to the Registry of Property of San Juan, Section 1, the deed above mentioned, together with the deed of mortgage and its extension, and the registrar refused the cancellation by the following decision:

" 'The cancellation requested by the deeds of constitution and extension of mortgages executed by the creditor partnership is hereby refused, because the period of said partnership expired on September 15, 1911, and the same was extended by deed dated the 25th of the same month, subsequent to its expiration, which is a violation of article 223 of the Code of Commerce in connection with article 119 ·of the same code, for which reason said extended partnership cannot be a continuation of the personality of the former partnership; and a cautionary notice for four months has been entered at folio 17, over, of volume 77, of ·this city, property 1663, duplicate, entry G, San Juan, April 20, 1912. José S. Belaval, Registrar.'

"Said decision has been appealed from by Jenaro San Miguel, and the same is submitted to us for our consideration and decision.

"The following facts appear from the deed of amendment and extension of the commercial partnership agreement executed on September 25, 1911:

"First. That by public deed of December 7, 1907, recorded in the Commercial Registry, an agreement was made constituting the commercial partnership of Sucesores de San Miguel Hermanos for a period of four years, which began to run from September 15 of the same year, antedating the effects of said agreement to said date.

"Second. By public deed of September 25, 1911, also recorded in the commercial Registry, the said commercial partnership agreement made by deed of December 7, 1907, was

amended and extended four years longer from the 10th of the said month of September in which the agreement was made, and all the effects of the deed of amendment and extension were antedated to said date.

"In view of these facts we are constrained to admit that the term of this commercial partnership agreement, Sucesores de San Miguel Hermanos, expired on September 15, 1911, and that subsequent to its expiration, on the 25th of the same month of September, the extension of said agreement was reduced to writing, but had already been agreed upon among the partners on the 10th of said month; and if the provisions of articles 119 and 223 of the Code of Commerce, invoked by the registrar as the ground for refusing the cancellation requested, have been violated thereby, such violation does not exempt from liability the managing partners of San Miguel Hermanos for agreements made by them with persons outside of the partnership, because article 120 of the same code provides that the managers of a partnership who violate the provisions of article 119 would be held liable jointly to persons outside of the partnership for contracts made by them on behalf of the partnership.

"In accordance with the foregoing principle the Supreme Court of Spain, by decision of December 6, 1887, held that the agreements and contracts made by the partners, as such, of a commercial partnership not legally formed are binding against them and in favor of third parties with whom they contract."

In the foregoing case this Court assumed that the deed of cancellation of mortgage had been executed in violation of the provisions of §§ 119 and 223 of the Code of Commerce (1911 ed., corresponding to §§ 98 and 142, 1932 ed., above cited) and therefore, that the partnership was dissolved when the deed was executed. However, this Court held that the deed was recordable, in view of the fact that the managing partner who acted in violation of the present § 98 is liable to persons outside the company with whom he made any contract on behalf thereof, in accordance with § 99 (formerly 120) of that same Code. Now, the fact that an alleged managing partner is personally liable to a foreign executing party for executing a void contract on the ground that it violated § 98 of the Code of Commerce does not

imply that such contract is recordable. A void contract does not become valid, for registration purposes, because the executing party is personally liable, for damages or otherwise, to the other executing party. The personal liability arising from the fact of a void contract is one thing and the validity or intrinsic nullity of such contract is another, for recordation purposes. Our system of registries is intended to protect third parties or future acquirers. The potential interest of the latter is to prevent that a contract in violation of law or executed by a person lacking capacity to execute be recorded. Such immanent interest must be protected by Registrars. Future acquirers receive no protection for the reason that one of the parties to the original contract be personally liable to the other executing party. Therefore, the case of *San Miguel* v. *Registrar of Property*, must be considered as overruled, as well as the case of *Rodríguez* v. *The Registrar*, 22 P.R.R. 730, in which the same theory was adopted. (As a matter of fact, the doctrine laid down in the *San Miguel* case was affected and impaired, without it being expressly overruled, in the subsequent case of *P. Gandía & Co.* v. *Registrar*).

█ In the case at bar, the Registrar concluded correctly that, in accordance with the documents presented and in accordance with the law, the partnership in question was already dissolved and the executing party, Pedro Nido, lacked capacity and power to act as a managing partner of an entity already dissolved, on the date of the execution of the deed of sale sought to be recorded. The dissolution of the partnership implied the extinction of the powers of Pedro Nido as managing partner, that is, as an active partner and he could not sell partnership property as such managing partner. *Paz* v. *Registrar*, 43 P.R.R. 835. Section 147 of the Code of Commerce provides:

"Section 147.—From the time an association is declared in liquidation the authority of the managing members to make new contracts and obligations shall cease their powers being limited

as liquidators to collecting the credits of the association, to extinguishing the obligations previously contracted as they fall due, and to the consummation of pending transactions."

The foregoing notwithstanding, Pedro Nido appeared in the deed in question not only as managing partner but also as liquidator. We have already determined that he could not act as managing partner. Nevertheless, as liquidator he acted validly in selling the property in question, inasmuch as his action was ratified by all the partners who composed the partnership. Let us see.

In the absence of any agreement to the contrary, a managing or active partner, at the dissolution of the partnership, may remain as liquidator, without a new appointment to that effect being necessary, in accordance with §§ 147 and 148 of the Code of Commerce, § 148 providing that in general or limited co-partnerships, should there be no opposition on the part of any of the partners, the persons who managed the common funds should continue in charge of the liquidation. The personality of a partnership in liquidation does not become extinguished, it continues under the representation of the liquidators for all the purposes mentioned in § 147. *Amer. Colonial Bank* v. *The Registrar*, 4 P.R.R. 525, 1st. ed., 272 2d ed.; *Sucs. of Sobrino, Fernández & Co.* v. *Reg. of San Juan*, 27 P.R.R. 425; *Quiñones* v. *Registrar of Property*, 18 P.R.R. 128; Judgments of the Supreme Court of Spain of February 28, 1936 and of January 20, 1940. At the expiration of the period of duration of a partnership, said partnership is dissolved, and the duties and liabilities of a liquidator are incumbent upon the managing or active partner. Judgments of the Supreme Court of Spain of June 23, 1903; October 12, 1888; October 3, 1894; April 3, 1902; Gay de Montellá, *Código de Comercio Comentado*, Vol. 2, p. 509; Benito: *Derecho Mercantil*, Vol. 3, p. 395.

There remains the problem as to the scope and limitations of the powers of a liquidator. Once a mercantile partner-

ship is wholly dissolved by the expiration of the term stipulated, it can not undertake new business and it enters into the stage of liquidation, which consists in paying the obligations previously contracted, (*Sotelo Hnos. & Cía.* v. *Tax Court*, 68 P.R.R. 585, 587–8), collecting the credits of the association, extinguishing the obligations previously contracted as they fall due and in the consummation of pending transactions. (Section 147 of the Code of Commerce).

In *Heirs of Jiménez* v. *Registrar*, 48 P.R.R. 837, it was held that, once a mercantile partnership is dissolved, in the absence of an express authorization, the liquidator lacks power and authority to sell real estate, without an adequate connection between such sale and his duties as liquidator, and in the absence of any connection between such sale and the payment or discharge of any of the partnership's obligations. In *Miramar Realty Co., Ltd.* v. *Registrar*, 44 P.R.R. 808, there was such a connection inasmuch as the civil partnership was constituted precisely to purchase and sell real estate, and a deed of sale made by a liquidator was held recordable.

It might be alleged that the primordial purpose of a liquidation is to convert the properties of the partnership into specie or money, by means of sales, in order to affect the definitive disappearance of the entity. Gay de Montellá, *op. cit.*, vol. 2, p. 505. On the other hand, an inadequate sale will prejudice the partners and, therefore, such sales should be covered by certain guaranty such as auction sales. Now, there is no possibility of prejudice if all the partners have given their consent to the sale. In *Amer. Colonial Bank* v. *The Registrar, supra,* and in *Sobrino, Fernández & Co.* v. *Reg. of San Juan, supra,* all the partners had previously and expressly authorized the liquidator to sell the properties of the partnership. It was held that the sale made by the liquidator was valid and recordable. The same view should prevail in the case at bar where all the partners specifically and expressly ratified the sale made by Pedro Nido. The

760

consent of the partners, although subsequently, gave validity to the sale. In a liquidation the partners are joint owners. *Vega* v. *Tossas*, 70 P.R.R. 368, footnote at p. 373. They ratified the sale, and hence, the latter was valid and recordable. In connection with this question we see no difference between a previous authorization and a subsequent ratification.

The General Directorate of the Registries of Spain has passed upon this question in decisions of March 10, 1909 and June 14 of that same year. In the former case the liquidators were expressly authorized to sell the properties of the partnership, and it was held that they had capacity to carry into effect the sale of a factory. In the latter case the members of a partnership in liquidation ratified a sale made by certain liquidators. It was held that the sale was valid and recordable, and it was indicated that the consent of the partners may substitute the lack of capacity of the liquidators, although it should be noticed that the sale took place in order to pay obligations contracted by the partnership. Since the deed of sale (No. 181 of November 1948, before notary Luis Domínguez Rovira), was recordable, the Registrar erred in refusing to admit it to record.

The decision appealed from will be reversed and the deed recorded.